IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| BUDDY CULLEN, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) ) v. ) ) ) KUNES COUNTRY AUTOMOTIVE MANAGEMENT, INC. d/b/a KUNES AUTO GROUP and KUNES FORD OF EAST MOLINE, INC., ) ) ) ) ) ) Defendants. ) | Case No. 4:24-cv-4153<br><br>Chief Judge Sara Darrow |

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
PLAINTIFF'S CLASS ACTION COMPLAINT**

**INTRODUCTION**

Plaintiff Buddy Cullen ("Plaintiff") brings this class action against Kunes Country Automotive Management, Inc. d/b/a Kunes Auto Group ("Kunes Auto Group") and Kunes Ford of East Moline, Inc. ("Kunes Ford") (collectively, "Defendants") for violations of the Illinois Biometric Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. Specifically, Plaintiff alleges that Defendants collected his and other putative class members' biometric identifiers and/or information (collectively, "biometric data") through a biometric key storage system that used a fingerprint scan to control employees' access to vehicle keys secured in a key cabinet. (ECF No. 1, Compl. ¶¶ 6, 28–32.)

Plaintiff brings three causes of action against Defendants under BIPA for (1) failing to develop, publicly disclose, and comply with "a retention schedule and guidelines for permanently destroying biometric identifiers and information" under Section 15(a), 740 ILCS § 14/15(a); (2) obtaining biometric data without first providing adequate written notice and obtaining a written

release under Section 15(b), 740 ILCS §§ 14/15(b), 14/10; and (3) disclosing biometric data without first obtaining informed consent under Section 15(d), 740 ILCS § 14/15(d). (*Id.* ¶¶ 2–3, 70–97.)

Defendants assert that Plaintiff's claims should be dismissed under Rule 12(b)(6) because (1) BIPA does not apply to Defendants because they qualify as "financial institution[s]" or their "affiliates" under the Gramm-Leach-Bliley Act ("GLBA"), *see* 740 ILCS 14/25(c); and (2) Plaintiff's Complaint does not comply with Rule 8(a)'s pleading requirements. (ECF No. 16, Defs.' Mem. at 3 and 8.) Defendants are wrong. For one, BIPA's exemption for financial institutions is an affirmative defense, which cannot be considered in the context of a Rule 12(b)(6) motion unless the Defendants' entitlement to the defense is apparent from the face of the Complaint (it is not). But even if it were appropriate to raise here, the exemption does not apply because Plaintiff's BIPA claims do not relate to Defendants' financial transactions with their automobile dealership *customers* (or any financial transactions whatsoever), but instead arise solely from their use of a key cabinet that controls *employee* access to vehicle keys using biometric finger scan authentication. Accordingly, the nonpublic personal information of Plaintiff and Defendants' other employees—including their biometric data—is not protected by the GLBA and therefore not exempt from BIPA. Plaintiff's allegations also adequately plead BIPA violations against both Defendants under the lenient notice pleading standard routinely applied by federal courts. *Kuklinski v. Binance Cap. Mgmt. Co.*, No. 21-CV-001425-SPM, 2023 WL 2788654, at *10 (S.D. Ill. Apr. 4, 2023). Defendants' motion to dismiss should be denied.

### THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT

The Illinois General Assembly enacted BIPA in 2008 to protect individuals' privacy interests in their "biometric identifiers," which include fingerprints, retina and iris scans, hand

scans and facial geometry. 740 ILCS 14/10; *Fox v. Dakkota Integrated Systems, LLC*, 980 F.3d 1146 (7th Cir. 2020). BIPA was created in response to the growing use of biometrics "in the business and security screening sectors." 740 ILCS 14/5. Referring to the immutability of biometric identifiers and the risk of identity theft, BIPA's legislative findings observe that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.* § 14/5(c). Because "the full ramifications of biometric technology are not fully known," the General Assembly found that "the public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.* §§ 14/5 (f)-(g).

Section 15 of the Act comprehensively regulates the collection, use, retention, disclosure and dissemination of biometric identifiers. 740 ILCS 14/15. Specifically, Section 15(a) of BIPA states:

> A private entity in possession of biometric identifiers or information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever comes first.

*Id.* § 15(a).

Section 15(b) of the Act prohibits private entities from collecting, capturing, or otherwise obtaining a person's biometric identifiers or information without the person's informed written consent. *Id.* § 15(b). Section 15(d) of the Act provides that no private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a

3

person's biometric identifier or biometric information without the person's consent. *Id.* § 15(d). In other words, the collection and/or disclosure of biometric identifiers or information is barred unless the collector first informs the person "in writing of the specific purpose and length of term for which the data is being collected, stored, and used" and "receives a written release" from the person or his legally authorized representative. *Id.* § 15(b).

## LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a plaintiff's complaint, not to decide the merits of the case. *Derfus v. City of Chicago*, 42 F. Supp. 3d 888, 893 (7th Cir. 2014). For purposes of a motion to dismiss, the court accepts "as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff." *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017). A court must deny a defendant's motion to dismiss if the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiff is not required to include "detailed factual allegations" in his complaint. *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013). Rather, Plaintiff need only "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "[A]t this stage of the litigation, 'the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Evans v. Corinthian Colleges, Inc.*, No. 1:14-cv-00002-SEB-DML, 2014 WL 2866369, at *1 (S.D. Ind. June 23, 2014) (quoting *Sanjuan v. Am. Bd. Of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)).

4

**ARGUMENT**

I. **Defendants Have Not Met Their Burden to Establish They Are Exempt "Financial Institutions" Under BIPA.**

As set forth above, BIPA is an Illinois law that regulates how private entities may collect and handle individuals' biometric data. Although BIPA generally imposes its regulations on any "private entity" that might collect or handle biometric data, Section 25(c) limits BIPA's scope:

> Nothing in this Act shall be deemed to apply in any manner to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm–Leach–Bliley Act of 1999 and the rules promulgated thereunder.

740 ILCS 14/25(c). Defendants argue that that BIPA does not apply to them under this exemption because Defendant Kunes Ford is an automobile dealership that finances its customers' purchases of vehicles and extends credit to its customers through retail installment contracts, and Defendant Kunes Auto Group is an affiliate of Kunes Ford. (ECF No. 16, Defs.' Mem. at 2.) But because Plaintiffs have not pled these facts, and Defendants have not met their burden to establish that the exemption applies to them, their motion to dismiss should be denied.

   A. **BIPA's Financial-Institution Exemption Is an Affirmative Defense Not Appropriate for Resolution on a Motion to Dismiss.**

Because BIPA's exemption for financial institutions does not bear on the sufficiency of Plaintiff's BIPA claims, it provides an affirmative defense. *Winforege, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 872 (7th Cir. 2012) (noting that a defense may be affirmative in character "if it does not controvert the plaintiff's proof") (internal quotation omitted); *see also Deyerler v. HireVue, Inc.*, No. 22 CV 1284, 2024 WL 774833, at *5 (N.D. Ill. Feb. 26, 2024) ("the financial institution exemption is akin to an affirmative defense, which cannot be considered in the context of a Rule 12(b)(6) motion unless the defendant's entitlement to the defense is apparent from the face of the complaint"). As such, Defendants have the burden to establish the exemption, and

5

Plaintiff has no obligation to plead around it. *Davis v. Jumio Corp.*, No. 22-CV-00776, 2023 WL 2019048, at *2 (N.D. Ill. Feb. 14, 2023).

A complaint is not required to anticipate affirmative defenses to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). On a Rule 12 motion, it is inappropriate to dismiss a claim based on an affirmative defense unless "the allegations of the complaint itself set forth everything necessary to satisfy" it. *Id.* Here, Plaintiff's Complaint is devoid of allegations concerning Defendants' credit and lending activities that would enable the Court to find for Defendants on their argument that BIPA does not apply to them. Indeed, Defendants' brief relies almost exclusively on non-record facts from Kunes Ford's website (one of the Defendants, but not both), *see* ECF No. 16, Defs.' Mem. at 6–8, which is a strong indication that their Section 25(c) defense is not fit for resolution at this stage. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (noting that affirmative defenses "typically turn on facts not before the court" at the motion-to-dismiss stage). For this reason alone, Defendants' motion should be denied.

**B.     BIPA's Financial-Institution Exemption Does Not Apply.**

As this Court has recognized, "financial institution" is a specific term of art used in the GLBA to describe GLBA-regulated entities. *See Duerr v. Bradley Univ.*, 590 F. Supp. 3d 1160, 1169 (C.D. Ill. 2022) (citing 16 C.F.R. § 313.3(k)(1)). Section 25(c) of BIPA discusses the exemption of "financial institution[s]" from BIPA in reference to the GLBA. *Id.* If a term has a settled legal meaning, the courts will normally infer that the legislature intended to incorporate that established meaning into the law. *Id.* Accordingly, under established canons of statutory construction, the term "financial institution" used in BIPA has the meaning given to it by the

GLBA. *Id.*[1] Critical for the context of this case, the exemption in Section 25(c) of BIPA does not apply to *all* financial institutions. *Kuklinski*, 2023 WL 2788654 at *8; *Stauffer v. Innovative Heights Fairview Heights, LLC,* 480 F. Supp. 888, 902 (S.D. Ill. 2020). Instead, the exemption is for those that are already covered by the GLBA, which mirrors BIPA in that it requires financial institutions to explain their information-gathering practices and how they safeguard sensitive data to their customers. *Id.*

Defendants argue that because the FTC identifies automobile dealerships as an example of "financial institutions" subject to the GLBA, and Defendants are an automobile dealership and its "affiliate," the BIPA exemption applies, ending the inquiry. ((ECF No. 16, Defs.' Mem. at 3–8.) Not so. Defendants selectively quote the FTC regulation, which states in full:

> An example of a financial institution is an automobile dealership that, as a usual part of its business, leases automobiles on a nonoperating basis for longer than 90 days is a financial institution **with respect to its leasing business** because leasing personal property on a nonoperating basis where the initial term of the lease is at least 90 days is a financial activity listed in 12 CFR 225.28(b)(3) and referenced in section 4(k)(4)(F) of the Bank Holding Company Act.

16 C.F.R. § 313.3(k)(2) (emphasis added). Notwithstanding Defendants' suggestion to the contrary, the regulation does not say that all automobile dealerships are financial institutions. As it indicates, an automobile dealership may qualify as a financial institution with respect to certain financial activities of its business, like leasing, but not others (like security procedures). There is simply no other way to read the limiting language of the regulation stating that an automobile

---

[1] Title V if the GLBA provides that a "financial institution" is "any institution the business of which is engaging in financial activities," 15 U.S.C. § 6809(3)(A), such as "[l]ending, exchanging, transferring, investing for others, or safeguarding money or securities"; "[p]roviding financial, investment, or economic advisory services"; and "[u]nderwriting, dealing in, or making a market in securities," 12 U.S.C. § 1843(k)(4) (enumerating various types of activities "considered to be financial in nature"). The Federal Trade Commission ("FTC"), in rules promulgated under Title V of the GLBA, has defined financial institution to include "an institution that is significantly engaged in financial activities." 16 C.F.R. § 313.3(k)(1).

dealership is a financial institution "with respect to its leasing business." Defendants would have this Court ignore this.

The fact that an automobile dealership may qualify as a financial institution only in relation to certain aspects of its business is critical in light of the specific allegations in Plaintiff's Complaint. As alleged, Plaintiff's BIPA claims do not relate to Defendants' leasing business to ***customers***, but instead arise out of the key cabinet that controls ***employee*** access to vehicle keys using biometric finger scan authentication—a function having nothing to do with any financial transaction. (ECF No. 1, Compl. ¶¶ 6, 28–32.) The exemption does not apply. *See Stauffer*, 480 F. Supp. 3d at 902 ("The financial institution exemption is not for *all* financial institutions; rather, it is for those that are already covered by another law similar to BIPA that requires financial institutions to explain their information-gathering practices and how they safeguard sensitive data to their customers.") (emphasis in original).

This is supported not only by the limiting language of the GLBA regulations, but also public policy behind both the GLBA and BIPA. Codified at 15 U.S.C. §§ 6801–6809, Title V of the GLBA provides that "[i]t is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a). It "contains a number of provisions designed to protect the privacy of 'nonpublic personal information' ... that consumers provide to financial institutions." *Trans Union LLC v. FTC*, 295 F.3d 42, 46 (D.C. Cir. 2002). In other words, Title V of the GLBA is a federal privacy law that regulates how financial institutions must handle certain ***customer*** information. *See Am. Bar Ass'n v. FTC*, 430 F.3d 457, 459 (D.C. Cir. 2005).

Plaintiff and the putative class members in this action are indisputably not Defendants' customers, but their employees. As such, their nonpublic personal information—including their biometric data—is not protected by the GLBA. Thus, applying Section 25(c) to Defendants in this context is at odds with the stated purpose of BIPA to broadly "protect[ ] Illinois residents' privacy interests in their biometric information." *Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 837 (N.D. Ill. 2021). And the rationale for why the legislature created the BIPA exemption does not apply here: employee biometric data is not "already subject to a comprehensive privacy protection regime under federal law," GLBA's privacy regulations are not sufficient to protect employee biometric data, and there is no concern that federal preemption would apply. *See Fee v. Illinois Inst. of Tech.*, No. 21-CV-02512, 2022 WL 2791818, at *4 (N.D. Ill. July 15, 2022); *see also* 15 U.S.C. § 6807(a) (GLBA only supersedes inconsistent state statutes). In fact, BIPA's legislative history makes clear "that BIPA should *not* apply" only "where the GLBA *does* … favor[ing] a construction of section 25(c) that directly harmonizes the respective scopes of BIPA and the GLBA." *Patterson v. Respondus, Inc.*, No. 20 C 7692, 2022 WL 7100547, at *4 (N.D. Ill. Oct. 11, 2022).

Against this backdrop, Defendants' authority is inapposite. (ECF No. 16, Defs.' Mem. at 3–5.) The plaintiffs in each case are students at universities, *i.e.*, the "customers" of the education and student loans the university provides. 16 C.F.R. § 313.3(h) (defining a customer as "a consumer who has a customer relationship with you"); *see also Powell v. DePaul Univ.*, No. 21 C 3001, 2022 WL 16715887, at *1 (N.D. Ill. Nov. 4, 2022); *Duerr*, 590 F. Supp. 3d at 1164; *Doe v. Northwestern Univ.*, 586 F. Supp. 3d 841 (N.D. Ill. 2022). Because the university defendants already have an "affirmative and continuing obligation" to "to protect the security and confidentiality" of the students' nonpublic personal information under the GLBA, it makes sense

that BIPA would not apply. 15 U.S.C. § 6801(a). Not so for Plaintiff Buddy Cullen, who was an employee and not a customer of Kunes Ford.

Even if Defendants *could* potentially qualify as a BIPA-exempt "financial institution," that determination is not appropriate on a motion to dismiss because, as multiple courts have held, it "presents a question of fact that cannot be determined based on the allegations of the Complaint." *Davis*, 2023 WL 2019048, at *4.[2] Indeed, Defendants contend that the Court should take judicial notice of certain facts drawn from Kunes Ford's website that they believe establish that Kunes Ford qualifies as a financial institution. But while courts may take judicial notice of court filings and matters of public record when considering a motion to dismiss, *see Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017), judicial notice is appropriate only when the fact "is generally known within the trial court's territorial jurisdiction" or the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). In support of judicial notice of its website, Defendants cite a single case where the website's authenticity was not in dispute. *See Cesca v. W. Ill. Univ. Bd. of Trustees*, No. 4:23-CV-04043-SLD-JEH, 2024 WL 152812, at *1 n.1 (C.D. Ill. Jan. 15, 2024). Here, although Defendants may have accurately taken a screenshot of Kunes Ford's website, Defendants have not established the truth of the representations made therein.

Far from meeting the well-established standard, Kunes Ford's unverified, untested and self-serving representations on its website, even if ultimately proven true, would demonstrate only that leasing and financing are available to its customers, not that Kunes Ford is providing those services

---

[2] *See also Harvey v. Resurrection Univ.*, No. 21-CV-3203, 2022 WL 3716213, at *4 (N.D. Ill. Aug. 29, 2022); *Fee*, 22 WL 2791818 at *6 (the Court cannot conclude at the motion to dismiss stage that IIT is an institution of higher education that regularly makes and administers student loans such that it qualifies for BIPA Section 25(c)'s exemption for financial institutions").

10

or that Kunes Ford is "an institution that is significantly engaged in financial activities," as required by the FTC. 16 C.F.R. § 313.3(k)(1); *see also Patterson*, 2022 WL 7100547 at *9 ("This court … is unwilling to conclude on this sparse record, that Lewis itself is "significantly engaged" in financial activities within the meaning of the GLBA."); *Fee*, 2022 WL 2791818 at *5 ("Although the Court may take judicial notice of these facts … it cannot conclude that they prove that IIT is a financial institution subject to Title V of the GLBA.") Likewise, Defendants have done nothing to establish that any relationship of control exists between Kunes Ford and Kunes Auto Group that would qualify Kunes Auto Group as an "affiliate of a financial institution" under BIPA and the GLBA. *See* 16 C.F.R. § 313.3(a) ("***Affiliate*** means any company that controls, is controlled by, or is under common control with another company.") (emphasis in original). Because Defendants have not met their burden to prove their affirmative defense, the Court should deny the motion to dismiss.

**II.     Plaintiff Adequately States Claims Against Both Defendants Under Rule 8(a).**

Defendants contend that Plaintiff's Complaint fails to comply with Rule 8(a)'s pleading requirements because Plaintiff has lumped Defendants together instead of separately identifying each Defendant's alleged misconduct. (ECF No. 16, Defs.' Mem. at 8–11.) Plaintiff's allegations place Defendants on notice of their potential liability under BIPA. That is all that is needed to comply with the Rule.

Unlike Rule 9(b), which requires claims of fraud and/or mistake be pled with particularity, Rule 8(a) states as follows:

> **(a) Claim for Relief.** A pleading that states a claim for relief must contain:
>
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

11

> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a). A complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," and its "[f]actual allegations must ... raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). "There is no 'group pleading' doctrine, *per se*, that either permits or forbids allegations against defendants collectively." *Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 955 (N.D. Ill. 2024) (internal quotation omitted); *see also Fulton v. Bartik*, 547 F. Supp. 3d 799, 810 (N.D. Ill. 2021) ("Group pleading, while not ideal, is not categorically impermissible."). Instead, the Complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2). Stated otherwise, a facially plausible complaint is one which permits "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, group pleading is only impermissible if Plaintiffs failed to provide sufficient detail to put Defendants on notice of their claims under Rule 8(a)(2). *See Fulton*, 547 F. Supp. 3d at 810 ("Notice and plausibility remain the benchmarks. [Citations]. Thus, group pleading is permissible so long as it provides notice to each defendant of the contours of the alleged deprivation and that he or she is alleged to have participated in it.").

BIPA likewise does not require heightened pleading. Indeed, all a plaintiff must do is allege that defendants collected, captured, purchased, received, or obtained their fingerprints without complying with BIPA's requirements. *Kuklinski v. Binance Cap. Mgmt. Co.*, 2023 WL 2788654 at *10 (citing *Roberson v. Maestro Consulting Services LLC*, 507 F. Supp. 3d 998, 1018 (S.D. Ill.

2020)). In this case, both Kunes Auto Group and Kunes Ford have been placed on notice of their potential liability under BIPA. Plaintiff has alleged that both Defendants engaged in conduct that violated BIPA. ECF No. 1, Compl. ¶¶ 29–40; *see also Mayhew v. Candid Color Sys., Inc.*, No. 3:23-CV-2964-DWD, 2024 WL 3650095, at *12 (S.D. Ill. Aug. 5, 2024); *Wordlaw v. Enter. Leasing Co. of Chicago, LLC*, No. 20-cv-3200, 2020 WL 7490414, *3 (N.D. Ill. Dec. 21, 2020) (finding, in a case arising under BIPA, the plaintiff alleged enough to put each defendant on notice of their alleged wrongdoing where "she plan[ned] to prove that both defendants violated BIPA, even though she [wa]s currently unable to allege which one in particular installed and controlled the timekeeping system"). Accordingly, Plaintiff has pled sufficient facts to state causes of action against both Defendants, and the motion to dismiss should be denied.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests this Court enter an Order denying Defendants' Motion to Dismiss Plaintiff's Class Action Complaint. Alternatively, should this Court find that Plaintiff's Complaint is deficient in any respect, Plaintiff respectfully requests leave to amend in order to cure any such deficiencies. *See, e.g.*, *Murphy v. Village of Hoffman Estates*, 959 F. Supp. 901, 901 (N.D. Ill. 1997) (leave to amend is liberally granted).

Dated: December 6, 2024          Respectfully submitted,

　　　　　　　　　　　　　　　　　　　／s/ Teresa M. Becvar
　　　　　　　　　　　　　　　　　　　Ryan F. Stephan
　　　　　　　　　　　　　　　　　　　James B. Zouras
　　　　　　　　　　　　　　　　　　　Teresa M. Becvar
　　　　　　　　　　　　　　　　　　　**STEPHAN ZOURAS, LLC**
　　　　　　　　　　　　　　　　　　　222 W. Adams St., Suite 2020
　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60606
　　　　　　　　　　　　　　　　　　　312.233.1550
　　　　　　　　　　　　　　　　　　　312.233.1560 *f*
　　　　　　　　　　　　　　　　　　　rstephan@stephanzouras.com
　　　　　　　　　　　　　　　　　　　jzouras@stephanzouras.com

13

tbecvar@stephanzouras.com

*Attorneys for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

    I, the attorney, hereby certify that on December 6, 2024, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

        /s/ Teresa M. Becvar